## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

KALEB MADISON                                                    PLAINTIFF

v.                    Case No. 4:17cv190-KGB

                      JURY TRIAL DEMANDED

CITY OF SHANNON HILLS, ARKANSAS;
CHIEF ALLEN SPEARS, in his individual and
official capacity as Shannon Hills Chief of Police;
OFFICER JEREMY BROWN, in his individual and
official capacity as aShannon Hills Police Officer; and
OFFICER CHRISTY DILLAVOU, in her individual
and official capacity as a Shannon Hills Police Officer

                                                                 DEFENDANTS

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 28 2017

JAMES W. McCORMACK, CLERK
By:_____
                        DEP CLERK

This case assigned to District Judge _Baker_
and to Magistrate Judge _Deere_

**COMPLAINT**

        Plaintiff, Kaleb Madison, by and through counsel, the Koch Law Firm, P.A., for his

Complaint against Defendants, states:

I.  INTRODUCTION

        1.      The United States finds itself in a crisis involving the public perception of police

misconduct. In one city after another across the nation there have been events ranging from

peaceful demonstrations to violent riots and murders of police officers, usually immediately

following—and clearly in response to—the use of force by police against citizens. Often, these

use of force incidents are accompanied by videos that purport to show wrongdoing on the part of

police.

        2.      With the development of digital camera and cellular telephone technology, public

video recording is now very widespread. A large percentage of persons now have cell phones in

their constant possession, and many of these cell phones are equipped with high quality cameras.

Likewise, the ability to record and store hours of digital images in a cost-effective manner has

prompted some law enforcement agencies—partially because of the large number of complaints against police in our nation—to outfit their police vehicles and police uniforms with cameras that capture video and audio of all or most interactions that those police have with the citizens they are sworn to protect. Also, many business and private property owners have installed video cameras that capture events on their property, including events involving police interactions with citizens.

3.      Other developments in technology have provided a forum for the public to share and view these videos in a simple manner without significant cost or technical expertise. Unlike years past—when a video would only receive widespread viewing and attention if it were picked up by a large news agency—a private individual now has the ability to post videos to online sources (such as YouTube and Facebook) that can be shared and seen by worldwide audiences. Videos may be posted within a few minutes of being recorded with very little cost or resources, while requiring the person posting the video to have minimal technical skills.

4.      Police have resisted the rights of citizens to record police activities. Recognizing the value of such videography, some states (including Arkansas) have enacted legislation specifically protecting an individual's rights to record police activity, and to prohibit police from interfering with—or retaliating against—these filmmakers.

5.      Indeed, incidents where police have tried to destroy or erase this type of film footage have prompted some civil rights organizations, including the ACLU, to create "mobile justice" applications for cellular telephones that will cause video footage to be automatically uploaded to a media "cloud," thus protecting the digital images from destruction or deletion by police.

6.      The result of this proliferation of video paints a discouraging picture of the reliability and conduct of our nation's police departments and police culture.

2

7.     This widespread use of digital camera technology has resulted in the discovery nationwide of thousands of examples—perhaps beginning with the famous Rodney King case—of police officers apparently abusing their authority, violating the civil rights of citizens, and violating the law themselves, in spite of their oath and duty to serve and protect the public and to obey the laws of our land.  Social media, news websites, and other media outlets are replete with examples of police stating in their written reports that one series of events occurred to justify their use of physical force and/or arrest, while a subsequent review of film footage of the incident shows a completely different series of events than those described in the police report.

8.     The near-constant flow of videos of police misbehaving is the largest factor pushing the current police crisis in the United States, leading to civil unrest, violence, deaths, and demands for changes to our system of policing in this country. This has caused a loss of faith in our law enforcement officers, and it threatens to plunge our society into more violence and unrest if it is not addressed by our law enforcement agencies and our courts.

9.     In the United States—before the widespread availability of digital video—police have enjoyed several decades of overwhelming support by our communities and our courts.

10.     Internal complaints against police officers seldom have resulted, historically, in any action being taken against the officers.  One recent study found that of 29,000 complaints filed against police over a four-year period from 2011-2015 in the city of Chicago, only 2.6 percent were sustained. (An even lower percentage of complaints by African American citizens were sustained.)  *See* "Police Abuse Complaints by Black Chicagoans Dismissed Nearly 99 Percent Of The Time," *Huffington Post*, December 17, 2015.

11.     Plaintiffs in federal lawsuits against police don't fare much better. Through legal defenses such as qualified immunity, and via the manner that courts currently use the summary

judgment process to disallow most lawsuits involving police from ever reaching a jury, victims of police misconduct find that trying to seek a lawful path to justice for the wrongs they have suffered at the hands of police officers is an unnecessarily long, difficult, expensive, and discouraging process. Many victims of civil rights violations—while they may not be so poor as to qualify to proceed *in forma pauperis*—simply cannot afford the expensive filing fees, depositions, and other costs associated with such litigation. Attorneys willing to take on such expensive and time-consuming litigation, especially considering the poor likelihood of surviving summary judgment and profiting from the cases, are sparse.

12.    Indeed, many in our society have decided that there is no justice to be found in our courts when the plaintiff is a person without a voice in society, and the defendant is a police officer. Therefore, some groups have decided that the only remedy or relief available to them— and the only hope for positive change—is in the form of the demonstrations and riots that have caused millions of dollars in property damage, as well as violence that has resulted in numerous injuries and deaths on both sides of the issue.

13.    This attitude of hopelessness by victims of police brutality and misconduct is apparently justified, as each day more videos prove to us that police have misused their authority—and gotten away with it—in violation of the public trust. Thus, the result of this wholehearted and blind faith support of police by our communities and courts—wherein police administrators and courts have ignored, disregarded, and dismissed all but the most egregious cases wherein plaintiffs show clear and convincing evidence of wrongdoing (usually through video, because absent video the testimony of police is almost always credited over the testimony of other witnesses)—has not been successful or justified, and it threatens to tear at the social fabric that maintains law and order in our country. That is, this blind faith in our police has had

the opposite result that was intended: instead of instilling faith in our police, it has actually led to a serious and widespread breakdown in the public trust for police; instead of ensuring peace and tranquility in our communities, it has resulted in fear, mistrust, violence, and unrest.

14.    Indeed, our refusal as a nation to take seriously those complaints against police who victimize our citizens (as well as the failure to hold accountable and punish the agencies that continue to employ these sub-standard police officers and/or fail to train them) has put the lives and wellbeing of our *good* police officers at risk.

15.    Of course, the most egregious allegations against police involve death or serious physical injury; these are the cases that get the most media attention and that lead to demonstrations and riots in our cities. Cases involving police misconduct that result in less severe physical injuries and other damages, such as the one being brought before the Court herein today, go largely un-addressed.

16.    It is apparent that positive change will have to begin on a case-by-case basis that includes confronting police who violate civil rights even when nobody gets killed. If we always wait until there is a loss of life, change is likely to be slow, expensive, and painful for our nation. According to the now-famous "broken window theory" of criminology, reducing crimes in society can best be accomplished by aggressively addressing lower-level offenses that do not lead to physical injury or death, rather than reacting only to the most severe cases.

17.    To that end, the Plaintiff herein brings before the Court the following Complaint:

## II.  PARTIES AND JURISDICTION

18.    This is an action to secure a remedy for damages to a citizen against law enforcement officers for the excessive use of force under 42 U.S.C. § 1983, the Fourth, Fifth, and

Fourteenth Amendments to the United States Constitution; the Arkansas Civil Rights Act of 1993, codified at Ark. Stat. Ann. § 16-123-105; and the Constitution of the State of Arkansas.

19.    Plaintiff Kaleb Madison was at all times relevant to this Complaint an adult resident of Saline County, Arkansas.

20.    Defendant Shannon Hills is a municipal corporation organized and existing under the laws of the State of Arkansas.

21.    Defendant Allen Spears was at all times relevant to this Complaint the chief of police of Shannon Hills, Arkansas.    Defendant Spears was responsible for the day-to-day operation of the Shannon Hills Police Department, was responsible for training, supervision, and discipline of the police officers of the department, and was the final policymaker with respect to law enforcement operations for Shannon Hills, Arkansas.

22.    Defendant Jeremy Brown was at all times relevant to this Complaint employed as a police officer in Shannon Hills, Arkansas. Indeed, Jeremy Brown was the assistant chief of police for Shannon Hills at the time of the incident giving rise to this lawsuit.

23.    Defendant Christy Dillavou was at all times relevant to this Complaint employed as a police officer for Shannon Hills, Arkansas. Defendant Dillavou was a ranking member of the Shannon Hills Police Department, and at the time of the incident giving rise to this lawsuit Dillavou held the rank of lieutenant.

24.    This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), and this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.  This Court has personal jurisdiction over the parties, and venue is proper under 28 U.S.C. § 1391(b).

### III.  GENERAL ALLEGATIONS OF FACT

25.    On or about January 12, 2015, Defendants Jeremy Brown and Christy Dillavou stopped a vehicle wherein Plaintiff was a passenger and placed Plaintiff under arrest for an outstanding misdemeanor warrant.

26.    Plaintiff did not offer any resistance to the arrest.

27.    The arrest was videotaped by a camera mounted in one of the police vehicles.

28.    Defendant Brown, assisted by Dillavou, attacked Plaintiff for no reason and threw him to the ground, injuring Plaintiff.

29.    Brown and Dillavou then fabricated police reports wherein they accused Plaintiff of resisting arrest and assaulting the officers.  Plaintiff was charged with these crimes.

30.    The video clearly and unquestionably refutes the officers' reports.  Indeed, the officers unlawfully fabricated the reports in a malicious attempt to protect themselves and cause Plaintiff harm.

31.    The resisting arrest and assault charges against Plaintiff were dropped by the prosecuting attorney.

32.    Defendant Allen Spears was the Chief of Police of Shannon Hills at the time, and he was on duty at the time of Plaintiff's arrest.

33.    After Plaintiff complained about the way he was arrested to Chief Spears, Spears refused to take any action against Defendants, effectively covering up for them and ratifying their behavior, despite video evidence that their police reports were false.

34.    Chief Spears has previously been found liable by the United States District Court for refusing to investigate unlawful behavior by police officers. (*See* Case No. 4:07-CV-568 GTE,

Eastern District of Arkansas.) Nevertheless, Defendant City of Shannon Hills hired Spears and continues to employ him.

35.    Plaintiff suffered physical injuries at the hands of Defendants Brown and Dillavou.

COUNT ONE: 42 U.S.C. § 1983

36.    Plaintiff realleges the foregoing as if fully set out herein.

37.    The above-described use of excessive force and unlawful arrest by members of the Shannon Hills Police Department was a violation of 42 U.S.C. § 1983, via the following constitutional rights:

a. The due process clause of the Fourteenth Amendment to the United States Constitution;
b. The due process clause of the Fifth Amendment to the United States Constitution;
c. The right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution;

38.    The actions of Defendant Jeremy Brown, Defendant Christy Dillavou, and Defendant Chief Allen Spears on this count were sufficiently egregious as to justify punitive damages against them individually.

COUNT TWO: THE ARKANSAS CIVIL RIGHTS ACT

39.    Plaintiff realleges the foregoing as if fully set out herein.

40.    The above-described use of force by members of the Shannon Hills Police Department was a violation of Arkansas Civil Rights Act as codified at Ark. Stat. Ann. § 16-123-105, based on the protections of the Arkansas State Constitution and other applicable rights and protections under Arkansas law.

41.    The actions of Defendant Jeremy Brown, Defendant Christy Dillavou, and Defendant Chief Allen Spears on this count were sufficiently egregious to justify punitive damages against them individually.

## COUNT THREE: VIOLATION OF THE ARKANSAS CONSTITUTION

42.    Plaintiff realleges the foregoing as if fully set out herein.

43.    The above-described use of excessive force and unlawful arrest by members of the Shannon Hills Police Department was a violation of the rights to due process and to be free from unlawful search and seizure guaranteed by the Arkansas Constitution.

44.    The actions of Defendant Jeremy Brown, Defendant Christy Dillavou, and Defendant Chief Allen Spears on this count were sufficiently egregious to justify punitive damages against them individually.

## COUNT FOUR: FAILURE TO TRAIN

45.    Plaintiff realleges the foregoing as if fully set out herein.

46.    The failure of Defendant City of Shannon Hills to properly investigate, hire, and train a competent chief of police and competent officers—and especially hiring and retaining Defendant Spears after him having been found liable for willfully refusing to investigate a police officer in a widely publicized former case—amounts to failure to train and to wanton disregard for the law and constitution in the manner in which they hire and retain officers and employees.

47.    Likewise, the failure of Defendant Allen Spears to properly investigate and take any action against the other Defendants in this matter likewise makes Defendant Spears guilty of the same wrongdoings.

48.    The actions of Defendant Chief Spears on this count—and especially given that Spears has already been previously declared liable for such an offence by the local federal courts—are sufficiently egregious as to warrant punitive damages against Spears in his individual capacity.

9

## DAMAGES

49.    As a direct and proximate result of said violations of Plaintiff's constitutional and statutory rights, he was made to suffer physical and emotional trauma, humiliation, and embarrassment.  Furthermore, Plaintiff was unlawfully deprived of his liberty and has incurred expenses that he would have not otherwise incurred.

WHEREFORE, Plaintiff prays for judgment against Defendants, for compensatory damages against all Defendants, for punitive damages against Defendants Brown, Dillavou, and Spears, for costs and attorney fees, and for all other proper relief to which he is entitled.

Respectfully submitted,

Koch Law Firm
2024 Arkansas Valley Drive, Suite 707
Little Rock, Arkansas 72212
(501) 223-5310  office
(501) 223-5311  facsimile
reggie@reggiekoch.com

By: _____
    Reggie Koch, Ark. Bar #2005125